**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067**

**Andrew B. Altenburg, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　　(856) 361-2320
**U.S. BANKRUPTCY JUDGE**

July 18, 2023

| | | |
|---|---|---|
| Tyrelle Lamar King<br>374 South 30th Street<br>Camden, NJ 08105 | Charles M. Izzo<br>Law Office of Charles M. Izzo<br>116 North 2nd Street<br>PO Box 2936<br>Camden, NJ 08102 | Adam D. Greenberg<br>Law Office of<br>Honig & Greenberg, L.L.C.<br>1949 Berlin Road<br>Suite 200<br>Cherry Hill, N.J. 08003 |

　　　　RE:　　In re Tyrelle Lamar King
　　　　　　　　Bankr. Case No 21-19296-ABA

## MEMORANDUM DECISION

Dear Mr. King, Mr. Izzo, and Mr. Greenberg:

　　　The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a), (b)(1), and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

　　　The court has already determined that this case lacked the requisite good faith when it was filed for an invalid purpose. Its findings and conclusions in that regard are fully detailed in its written opinion (the "Opinion"), Doc. No. 64. Those findings and conclusions are final. There is no need to do another or independent determination of the facts establishing a lack of good faith and invalid bankruptcy purpose for the purposes of determining whether sanctions are appropriate here. *See In re Collins*, 250 B.R. 645, 656 (Bankr. N.D. Ill. 2000) (facts leading to the dismissal of a case establish sanctionable conduct under Rule 9011 & section 105(a)); *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 171 (Bankr. S.D.N.Y. 2004) ("same factors that led to the dismissal of these cases also clearly support the imposition of sanctions"). Considering those facts and the law on the issues, the court determines that an imposition of sanctions against Tyrelle King and Charles Izzo, Esquire, both, jointly and severally, is appropriate here.

Relevant Procedural History

Procedurally, this bankruptcy case was filed on December 1, 2021. Almost immediately thereafter, Ms. Anedia Henriquez, a secured creditor in this case, filed her Motion for Stay Relief, Dismissal and/or for Sanctions, Doc. No. 12, seeking sanctions against the debtor, Mr. King, as well as against his counsel, Mr. Izzo, alleging a scheme to hinder and delay Ms. Henriquez in enforcing her rights in connection with her secured claim. After multiple submissions and hearings, the court, through its Opinion, dismissed the case for a lack of good faith and an invalid bankruptcy purpose. The court advised the parties that it would issue a separate order to show cause for sanctions as requested against Mr. King and Mr. Izzo pursuant to Fed. R. Bankr. P. 9011(c), 11 U.S.C. § 105(a) and this court's inherent sanctioning power, and 28 U.S.C. § 1927. It then entered an order for dismissal which preserved the right for the court to address sanctions. Doc. No. 65 (the "Dismissal Order"). The court then issued its *Order to Show Cause Why Sanctions Should Not Be Awarded* (the "OSC"), Doc. No. 66, which was properly served on all parties, Doc. No. 71. Ms. Henriquez responded to the OSC, providing legal argument and requesting, as a sanction, reimbursement of attorney's fees of approximately $22,000 and expenses of approximately $1,800, both of which were detailed in that response. Doc. No. 72. Mr. Izzo responded to the OSC, presumably on his own behalf, by filing an unresponsive pleading which was nothing more than a letter and certificate of appreciation from New Jersey Legal Services recognizing his contributions to its pro bono clients. Doc. No. 79. Nowhere in that submission is remotely a response to the OSC or Ms. Henriquez's response and request for fees and expenses, or any legal argument, and Mr. Izzo does not refute any of the findings or conclusions set forth in the Opinion. *Id.* The court was left to speculate what Mr. Izzo's response meant—and it remains unsure.

Mr. King, without the assistance of counsel, appealed the Dismissal Order. As such, the court stayed the OSC until the appeal was decided. Ultimately, the appeal was dismissed. Doc. No. 92. With the appeal dismissed and at the request of Ms. Henriquez, Doc. No. 93, the court entered its *Order Setting Sanctions Hearing* to address Ms. Henriquez's motion for sanctions, Doc. No. 94. That order was properly served on all parties. Doc. No. 95. Mr. Izzo and Ms. Henriquez filed pleadings, and appeared and made arguments at the sanctions hearing. Mr. King did not. The court closed the record and took the matter under advisement. The court strongly urged the parties to seek an amicable resolution to this matter. It was reported that Mr. Izzo was unresponsive to counsel to Ms. Henriquez in that regard. Doc. No. 101. As such, this matter is now ripe for disposition.

Relevant Background

While the Opinion is replete with examples of a lack of good faith, scandalous pleadings, unnecessary delay, and needless litigation and costs, some examples are worth repeating here. Relevant hereto was that Mr. King and Mr. Izzo claimed that the purported purpose of the chapter 13 bankruptcy case was to cram down a property tax lien held by Ms. Henriquez against certain property located on Decatur Street in Camden, New Jersey (the "Property"). After multiple pleadings, hearings, and an examination of the record, and as set forth in detail in the Opinion, it was clear to the court that this case lacked the requisite good faith and was filed for an invalid bankruptcy purpose when Mr. King filed it with Mr. Izzo's assistance. It was also clear that Mr. King did not fully comprehend all aspects of his bankruptcy case and his purpose in filing for

bankruptcy, especially with regard to the treatment of the Property or the transfer thereof.[1] Ultimately, when pressed, Mr. Izzo admitted that he did not properly counsel Mr. King in connection with his representation of Mr. King in the case. Audio of 5/30/23 hearing at 2:09 p.m. Certainly, the scheme to transfer an interest in the Property to Mr. King and then address the secured claim of Ms. Henriquez did not come from Mr. King, as Mr. Izzo admitted that it was Mr. King's uncle who originally approached Mr. Izzo with the scheme. Audio of 5/30/23 hearing at 2:11 p.m. Moreover, it was Mr. Izzo who prepared the deed, and he was ultimately paid by Mr. King's uncle. Doc. No. 46-3, p. 21. Mr. King's uncle also paid Mr. Izzo's fee for Mr. King's bankruptcy filing, *id.*, p. 24, even though Mr. King and Mr. Izzo both certified on the *Disclosure Of Chapter 13 Debtor's Attorney Compensation* filed with the petition that it was Mr. King, as the debtor, who paid Mr. Izzo, Doc. No. 1, pp. 45–46.

Prior to the transfer of the Property to Mr. King, Ms. Henriquez filed a complaint against Greta King—Mr. King's grandmother—and subsequent lienors to foreclose the equity of redemption in the Property. After the complaint was filed, Greta King transferred title to the Property from herself to Mr. King and herself for $1 by a quitclaim deed prepared by Mr. Izzo. With the threat of the state court entering summary judgment in favor of Ms. Henriquez, Mr. King filed this chapter 13 bankruptcy case. This alone does not constitute bad faith. However, when coupled with other facts, and based upon a totality of the circumstances, the court could only conclude that the entire case was a scheme to hinder and delay Ms. Henriquez's rights, lacked good faith, and was filed for an invalid bankruptcy purpose.

In response to the allegations of bad faith, Mr. King testified that he considered filing for bankruptcy even before he obtained an interest in the Property. He claimed that he did so due to "outstanding bills and all so I wanted to build my credit score up." Doc. No. 46-3, p. 22. (Incredibly, Mr. Izzo told him that filing bankruptcy would help his credit score!) The undisputed facts tell a different story. There was no apparent need to file bankruptcy to address his other creditors. Mr. King admitted that he actually did not owe money to several of the creditors listed on his petition, and that nobody was suing or badgering him for any reason. He certified that he was gainfully employed and able to pay his bills on time as they came due. What is more, he admitted that he was not even paying several of the expenses he disclosed on his Schedule I/J, which resulted in a difference of $657 available to be paid to creditors. And, despite initially disclosing $1,467 in net monthly income on Schedule I/J—more than enough to pay all creditors in full—Mr. King proposed to pay *only* $720 per month to his creditors. Finally, contrary to his initial statements otherwise, Mr. King eventually acknowledged that the COVID crisis did not affect him financially and did not stop him from paying his bills.

As for the Property, Mr. King displayed a complete disregard concerning his "purchase" of, interest in, and maintenance of the property. He had only visited the property "maybe twice," and only after he had already become a co-owner. He never went inside the Property. He does not pay any expenses connected with the Property.

Most incredibly, Mr. King denied that filing bankruptcy was part of the plan to address the Property; yet all of his proposed chapter 13 plans had absolutely *everything* to do with the Property! First, he proposed to cram down Ms. Henriquez's claim to an amount not supported by any

---

[1] Indeed, the court even speculated whether Mr. King was actually "running the show." *See* Opinion, p. 20.

evidence and to set aside any other claims against the property. He proposed to pay unsecured creditors 100 percent. But then, in his modified plan drafted by Mr. Izzo, Mr. King proposed to pay the actual value of the property as supported by the evidence to Ms. Henriquez and only pay unsecured creditors *pro rata* payments from any remaining funds—despite his *significant disposable income*. Confusingly, at one point in defending his actions, Mr. Izzo referenced the CARES Act amendment, stating that the purpose of the CARES Act was both to expedite bankruptcy processes and to allow chapter 13 debtors to *extend* (i.e., not expedite) plans to up to seven years. Notably, none of Mr. King's proposed chapter 13 plans even sought seven-year terms. Finally, Mr. Izzo argued that Mr. King could facilitate a *full* redemption of Ms. Henriquez's lien—but none of the plans he drafted proposed to pay the lien in full, but instead, proposed to cram it down.

Other troubling examples which led the court to its conclusions in its Opinion and which are relevant to its consideration here include Mr. Izzo's unresponsive pleading to Ms. Henriquez's motion, Doc. No. 15, where Mr. Izzo, instead of addressing the issue at hand, chose to accuse Ms. Henriquez of Malicious Abuse of Process—and even then, incorrectly cited an inapplicable New Jersey statute and to inapplicable case law. In addition, Mr. Izzo continued to incorrectly cite statutes, case law, procedures, and propositions throughout this case. For example, in his response, the statute cited did not even apply to the transaction at issue, as the statue applied to parent-child relationships, whereas the relationship between Greta King and Mr. King is that of grandmother-grandchild. In making his argument, Mr. Izzo *independently* certified that the grandmother had adopted Mr. King as her son, but this proved to be untrue and was refuted by Mr. King (Mr. Izzo's *own* client!) directly. Doc. No. 50, ¶2(4).

At one point, Mr. Izzo vexatiously concluded a pleading with the following:

> Debtor has presented admissible evidence in the form of the appended *Declarations of the Slandered Parties*, declared under penalty of perjury, which unequivocally refute the maniacally absurd and frivolous allegations set forth in Creditor's moronic argument based exclusively upon speculation and conjecture in the absence of a single shred of evidence. The Court may take judicial notice of the Creditor's moronic lust to acquire a windfall by any method of demented skullduggery conceivable in the baseless, liable, and slanderous content of Creditor's brief not supported by a single shred of proffered evidence and dismiss Creditor's frivolous argument for lack of supporting evidence.
>
> WHEREFORE, for the foregoing reasons Debtor respectfully requests this Honorable Court to enter a judgment dismissing Creditors [sic] motion as having been submitted in Bad Faith for purposes of delay and distraction in a misguided effort to contaminate judicial process to obtain an objective not intended by law.

Doc. No. 15, p. 7. The court noted in its Opinion that such a provoking motion was without merit, as the lack of equity was evidenced by Ms. Henriquez's claim (as acknowledged by Mr. King) exceeding the value of the Property actually proffered by Mr. King and/or Mr. Izzo on Mr. King's petition—under penalty of perjury! Opinion, p. 6. Mr. Izzo did not offer any credible argument, if any at all, nor any facts, that showed the case was filed for a valid bankruptcy purpose.

Mr. Izzo also filed an insufficient *Motion to Reduce Claims*, Doc. No. 32, leaving the court to speculate what relief was being sought. No certification. No legal brief. At the hearing on that motion, counsel for Ms. Henriquez and for the City of Camden appeared. Mr. Izzo failed to appear. Simply put, a pleading filed with no apparent grounds and no prosecution, creating trouble and expense for the other parties is the dictionary definition of a vexatious suit. VEXATIOUS SUIT, Black's Law Dictionary (11th ed. 2019).

Mr. King cannot escape personal responsibility either. The incorrect or insufficient information on his Petition was his responsibility. His cavalier attitude or lack of comprehension about the information contained on his Petition, or more importantly, about the Property, is simply not acceptable. Mr. King failed to cooperate with Ms. Henriquez in connection with a properly issued subpoena, ultimately requiring the court to enter an order in favor of Ms. Henriquez to compel Mr. King's attendance at a deposition—further cost and delay.[2] What is more, on his own accord, he filed his own scandalous and unsupported pleadings. Doc. Nos. 40 and 50. There was no basis in law or fact to support the allegations as Mr. King never presented any evidence, or even tried to present any evidence, to support his accusations. Mr. King has demonstrated throughout the case that he was an active, if not knowing, participant in a scheme to hinder and delay Ms. Henriquez in lawfully enforcing her rights and remedies.

<u>Mr. Izzo's Second Response to the OSC</u>

Mr. King, despite having proper notice of the sanctions request and hearing, chose not to submit a response or appear. Mr. Izzo, at the May 30, 2023, hearing, confirmed that he is not representing Mr. King in connection with the OSC and sanctions request. Audio of 5/30/23 hearing at 2:00 p.m.

Mr. Izzo filed his response to the OSC. Doc. No. 99. Mr. Izzo's short brief is flawed. He argued that 9011 sanctions are not warranted because "there are no misrepresentations of material facts and no repeat filings," *Id.*, p. 3. First, sanctions under Rule 9011 are not limited to "misrepresentations of material facts" or "repeat filings." Neither phrase appears anywhere in that Rule, and the court is not aware of, and Mr. Izzo did not cite, any cases holding that Rule 9011 is so limited.

Second. Mr. Izzo claims, without more, that none of the criteria set forth in 9011(b) have been violated. He makes no reference to or otherwise address Rule 9011(b)(1). What he is missing is that "[t]he actions that trigger liability under Rule 9011 are 'signing, filing, submitting or later advocating' a paper that violates the Rule's certification standards." *In re Jazz Photo Corp.*, 312 B.R. 524, 531 (Bankr. D.N.J. 2004). "Rule 9011 penalizes an attorney who files 'a petition, pleading, written motion, or other paper' that does not satisfy *one* of the four professional standards prongs of Rule 9011(b)." *In Re Highgate Equities, Ltd.*, 279 F.3d 148, 153 (2d Cir. 2002) (emphasis added). In other words, "[a] failure of *any prong* of the rule indicates a sanctionable act by a litigant." *Givens v. Criswell*, No. 5:08CV25, 2010 WL 10862445, at *4 (N.D.W. Va. June 24,

---

[2] Interestingly, at one point during the subpoena process, Mr. Izzo professed not to have contact information for Greta King, despite having represented her in several deed transfers—further delaying the process.

2010), *aff'd sub nom*, *Givens v. Main St. Bank*, No. 5:08CV25, 2010 WL 2949621 (N.D.W. Va. July 22, 2010) (emphasis added). Thus, the fact that a case is filed for an improper purpose "is alone sufficient to warrant a sanction." *In re Flashcom, Inc.*, 503 B.R. 99, 126 (C.D. Cal. 2013), *aff'd*, 647 F. App'x 689 (9th Cir. 2016). Moreover, the burden of proof is on the moving party to prove that sanctions are warranted. *See*, e.g., *In re Weihert*, 489 B.R. 558, 568 (Bankr. W.D. Wis. 2013); *see also Gary v. Braddock Cemetery & Consol Energy*, 334 F. App'x 465, 467 (3d Cir. 2009); *Rubino v. Lackawanna Cnty.*, No. 3:18-CV-1211, 2020 WL 241571, at *2 (M.D. Pa. Jan. 14, 2020). Ms. Henriquez has met this burden, as demonstrated by the court's finding that Mr. King's case lacked the requisite good faith and was filed for an invalid purpose. The Opinion and OSC confirmed this finding. "Once a prima facie case has been established, 'the burden shifts to the party from whom the sanction is sought' to show that the rule has been complied with." *Weihert*, 489 B.R. at 568 (citing *In re KPMA P'ship, Ltd.*, No. 04–35261, 2006 WL 2868978, at *1 (Bankr. S.D. Tex. Oct. 5, 2006); *see also Kliegl Bros. Universal Elec. Stage Lighting Co, Inc.*, 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999). Mr. Izzo failed to do so in his brief and was unpersuasive in his arguments at the May 30 hearing.

Third, Mr. Izzo's sole reliance in his brief, without any analysis, on two ethics decisions issued by the Supreme Court of New Jersey's Disciplinary Review Board is at best, misplaced, and at worst, another example of Mr. Izzo filing pleadings that are baseless and unsupported by the law on the issue at hand. Simply put, these decisions provide no support for his position. They are appeals from New Jersey District Ethics Committee decisions, both of which involved attorneys who had already been sanctioned by bankruptcy courts. As these decisions are ethics decisions, the only questions directly addressed by these decisions are whether the attorney's conduct violated the *New Jersey Rules of Professional Conduct*. Before this court, however, is the question of whether Mr. Izzo and Mr. King's conduct is sanctionable *under Federal Law*, and neither case makes any finding on this basis. Thus, the decisions are not binding on the court, nor are they even relevant to the case here, as the standards for ethical violations under the Rules of Professional Conduct are different from the standards for sanctions. *See Campmor, Inc. v. Brulant, LLC*, No. 2:09-CV-05465 WHW, 2014 WL 5392036, at *6-*7 (D.N.J. Oct. 21, 2014) (distinguishing sanctionable conduct under Rule 11 from ethical misconduct).

Finally, Mr. Izzo's brief does not address or even refute the court's ability to grant sanctions under section 105(a) or this court's inherent authority—issues fully briefed by Ms. Henriquez many months ago. Doc. No. 72. A concession, maybe? To be sure, none of Mr. Izzo's arguments at the sanctions hearing on May 30 were persuasive, and if anything, provided even further confirmation to the court that this case was filed with a lack of good faith, without a valid bankruptcy purpose (certainly Mr. Izzo did not present any credible argument, if any at all, or fact that showed the case was filed for a valid bankruptcy purpose), and was nothing more than a continued scheme to hinder and delay Ms. Henriquez in enforcing her rights and remedies.

<u>Sanctions Are Warranted</u>

Federal Rule of Bankruptcy Procedure 9011, which largely mirrors Federal Rule of Civil Procedure 11, states that by presenting a petition to the court, an attorney is certifying that to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "it is not being presented for any improper purpose, such as to harass or to

cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1). The rule "requires attorneys to take responsibility" and "conduct[] an adequate inquiry into the facts and law before filing the claim." *In re Kelly*, 649 B.R. 448, 470–71 (Bankr. W.D. Pa. 2023). For the purposes of this rule, reasonableness is defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *In re Taylor*, 655 F.3d 274, 284 (3d Cir. 2011) (citing *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir.1991)). Rule 9011(c) states that a court may impose sanctions for violations of this rule "after notice and a reasonable opportunity to respond." Fed. R. Bankr. P 9011(c). Although Rule 9011 ordinarily requires a moving party to send a safe harbor letter and allow the opposing party an opportunity to withdraw their pleading, this is not the case when sanctions are sought for the filing of the petition itself. Fed. R. Bankr. P. 9011(c)(1)(A); *see also In re Schemelia*, 607 B.R. 455, 460 (Bankr. D.N.J. 2019); *In re Antonelli*, 2012 WL 280722, at *8 (Bankr. D.N.J. Jan. 30, 2012).

Ms. Henriquez provided no safe harbor letter regarding pleadings filed after the filing of the Petition, so for purposes of Rule 9011, the court may only consider the Rule as it applies to the filing of the Petition. The court notes that under the Rule, sanctions may be levied not just on attorneys, but also on the parties that have violated the Rule or are responsible for the violation. Fed. R. Bankr. P. 9011(c)(1)(B); s*ee In re Jazz Photo Corp.*, 312 B.R. at 535 ("[A] represented party can be sanctioned for a violation of Rule 9011, if such a party 'had some direct personal involvement in the management of the litigation and/or the decisions that resulted in the actions which the court finds improper.'") (citing *Indep. Fire Ins. Co. v. Lea*, 979 F.2d 377, 379 (5th Cir.1992)). "There is no constraint on awarding sanctions against represented parties where the party is presenting papers to the court for an improper purpose[.]" *In re Vascular Access Centers, L.P.*, 646 B.R. 735, 754 (Bankr. E.D. Pa. 2022); *see also In re Collins*, 250 B.R. 645, 660 (Bankr. N.D. Ill. 2000) (awarding Rule 9011 sanctions against the debtor individually because "the petition was filed on his behalf and under his direction for the sole purpose of using the bankruptcy system to [frustrate his creditors].").

As demonstrated in the Opinion and above, the totality of the circumstances show that this case was filed in bad faith as part of a scheme to harass, delay and needlessly increase the cost of litigation to Ms. Henriquez. Sanctions are warranted against both Mr. Izzo and Mr. King. Mr. King filed this bankruptcy case in bad faith. He signed his Petition and related pleadings certifying that the information contained therein was accurate. It was not. He claimed his case was not at all about the Property—but clearly, his plan filed with the Petition, which he and Mr. Izzo drafted, signed, and filed, showed otherwise. He had no real understanding of the Property, his role with regard thereto, or the treatment of Ms. Henriquez's claim against the Property. The bankruptcy was filed as part of a scheme to hinder and delay Ms. Henriquez from enforcing her rights and remedies against the Property. Examples supporting such a determination are set forth in the Opinion. The bankruptcy case was filed for an invalid purpose and consequently, Mr. King's signing the Petition and its filing was presented for an improper purpose and to harass or unreasonably delay Ms. Henriquez. Sanctions are warranted under Rule 9011(b), as he was an active participant in the filing of his petition, either directly or through Mr. Izzo at his direction, for the sole purpose of using the bankruptcy system to frustrate his creditor Ms. Henriquez.

Mr. Izzo is equally culpable. The court concludes that he was a willing and active participant in perpetrating the scheme against Ms. Henriquez. In the face of the complaint to foreclose the equity of redemption, he prepared the deed transferring the Property, in contemplation of the scheme to utilize the bankruptcy process to hinder and delay Ms. Henriquez in enforcing her rights and remedies against the Property. Mr. Izzo, a seasoned attorney, had to know that such a transfer—in the face of an imminent foreclosure—could be a fraudulent transfer as to Ms. Henriquez and ultimately set aside. His response to the court's question on this issue at the May 30 hearing was lacking. He incredibly counseled Mr. King that filing bankruptcy would help his credit score when in reality, Mr. Izzo was completely aware that the true purpose of the filing was to cram down Ms. Henriquez's lien against the Property. After initiating the scheme to delay Ms. Henriquez's rights by transferring an interest in the Property to Mr. King after the complaint to foreclose the equity of redemption was filed, Mr. Izzo then filed the bankruptcy petition on Mr. King's behalf knowing that it would hinder and delay Ms. Henriquez's rights and remedies. His filing of the Petition was for an improper purpose. Sanctions are warranted under Rule 9011(b).

Even if the court is incorrect in its application of Rule 9011, sanctions against Mr. King and Mr. Izzo are still warranted under section 105(a) of the Bankruptcy Code and this court's inherent powers. Bankruptcy courts may award sanctions under section 105(a), which provides bankruptcy judges with the broad power to "issue any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, as well as to take any action or make any determination "necessary or appropriate to enforce or implement court orders or rules, or to *prevent an abuse of process.*" 11 U.S.C. § 105(a) (emphasis added). "This broad power is intended to be exercised to prevent abuse of bankruptcy procedure," *In re Delaware Valley Lift Truck Inc.*, 640 B.R. 342, 365 (Bankr. E.D. Pa. 2022), and this power may be used to "protect the integrity of the Bankruptcy Code as well as the judicial process." *In re Miller*, 529 B.R. 73, 85 (Bankr. E.D. Pa. 2015). This includes the ability to sanction bad faith bankruptcy filings. *Matter of Volpert*, 110 F.3d 494, 501 (7th Cir. 1997); *see also In re Rainbow Mag., Inc.*, 77 F.3d 278, 284 (9th Cir. 1996); *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994).

In addition to its authority under section 105(a) of the Bankruptcy Code, a bankruptcy court, as a federal court, also has the "inherent power to impose attorney's fees as a sanction for bad-faith conduct," as well as when a party acts "vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 50 (1991); *see also Hall v. Cole*, 412 U.S. 1, 5 (1973); *Lichtenstein v. Lichtenstein*, 481 F.2d 682, 684–85 (3d Cir. 1973). In contrast to sanctions issued under Bankruptcy Rule 9011 and Civil Rule 11, which require only a showing of objectively unreasonable conduct, *see, e.g.*, *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 616 (3d Cir. 1991), invocation of a federal court's inherent power to sanction usually requires a finding of bad faith. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995); *see also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 (3d Cir. 2008); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 181 (3d Cir. 2002). "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987). In the bankruptcy context, courts have held that "[u]se of this authority is appropriate when the bankruptcy is filed not for the purpose of reorganization, but simply to

delay a creditor's state-court remedies." *In re Antonelli*, 2012 WL 280722 at *13; *see also In re Mondelli*, 558 F. App'x 260, 263 (3d Cir. 2014) (affirming a bankruptcy court's issuance of sanctions where the debtor filed the case not with a valid reorganizational purpose, but to forestall the efforts of a creditor to foreclose). For example, "[u]sing the automatic stay in 11 U.S.C. § 362(a) as a litigation ploy to drag out foreclosure proceedings . . . constitutes objective bad faith." *Matter of Lisse*, 921 F.3d 629, 642 (7th Cir. 2019); *see also Hilgeford v. The Peoples Bank*, 776 F.2d 176, 179 (7th Cir. 1985).

For bankruptcy courts, the power to sanction extends not only to sanctions for bad faith filings, but also to sanctions where a debtor has either commenced or continued an action "in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Spectee Grp., Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995). Furthermore, the power to sanction bad faith bankruptcy filings extends both to attorneys as well as to debtors, and a bankruptcy court may, in the exercise of its discretion, choose to sanction either, sanction neither, or sanction both. *In re Antonelli*, 2012 WL 280722 at *13; *see also In re Cartisano*, No. 8-18-70703-REG, 2019 WL 1028497, at *3 (Bankr. E.D.N.Y. Mar. 4, 2019); *In re Courtesy Inns, Ltd.*, Inc., 40 F.3d at 1089; *In re Graffy*, 233 B.R. 894, 898 (Bankr. M.D. Fla. 1999). Unlike Rule 9011, no safe harbor letter is required for the imposition of sanctions under 11 U.S.C. § 105(a) or the court's inherent powers.

No question, Mr. King filed his case in bad faith. It was for an invalid purpose and continued the scheme to harass, delay, and needlessly increase the cost of litigation to Ms. Henriquez, as well as delayed the state court remedies of Ms. Henriquez. The bad faith started on the first day of the case and continued throughout the case. This, together with the Petition containing false information; his apparent lack of knowledge about the case and the Property or Ms. Henriquez's claim; his repeated scandalous and unsupported pleadings and false accusations made after the case was filed; his failure to cooperate with Ms. Henriquez and attend his deposition; and the invalid purpose of the case all evidence of an abuse of the bankruptcy process and bad faith warranting sanctions under both 11 U.S.C. § 105(a) and the court's inherent powers. *See Volpert*, 110 F.3d at 501; *Rainbow Mag., Inc.*, 77 F.3d at 284; *Courtesy Inns, Ltd.*, 40 F.3d 1089; *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d at 1225; *Schaefer Salt Recovery, Inc.*, 542 F.3d at 97; and *Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d at 181.

Likewise, Mr. Izzo is equally culpable, warranting sanctions under both 11 U.S.C. § 105(a) and the court's inherent powers for his role in this case. The court has reviewed the record, and has had the opportunity to hear from Mr. Izzo and assess his credibility firsthand, and finds that he was a willing and active participant in Mr. King's scheme. The court finds any testimony to the contrary entirely self-serving and unreliable. His non-responsive pleadings are baffling. His admitted improper counseling of Mr. King is frustrating. After initiating the scheme to delay Ms. Henriquez's rights by transferring an interest in the Property to Mr. King after the complaint to foreclose the equity of redemption was filed, Mr. Izzo then filed the bankruptcy petition on Mr. King's behalf knowing that it would hinder and delay Ms. Henriquez's rights and remedies. Moreover, Mr. Izzo also filed multiple pleadings in the case asserting claims or legal contentions that were inapplicable to the issue and/or had no basis in law. His CARES Act argument was at best, confusing. He filed unresponsive pleadings which had no basis in law as to the issue at hand. He continually cited inapplicable statutes and case law that had no relevance to the issue at hand.

His assertion of a malicious abuse of process was completely without merit. He also filed a motion without any factual or legal basis and, despite being opposed, failed to appear to prosecute that motion, further requiring other parties to unnecessarily expend time and money responding to and appearing for that motion.

Along with that, Mr. Izzo filed multiple pleadings in the case containing unsupported allegations and factual contentions that proved to be completely untrue. For example, Mr. Izzo certified under penalty of perjury that he filed for bankruptcy on behalf of Mr. King because his financial stability was seriously impacted by COVID, Doc. No. 15, p. 10, but Mr. King himself admitted that COVID had no effect on his ability to pay his debts as they became due. He stated that Mr. King was the adopted son of his grandmother—this too was false. Mr. Izzo, after an investigation, had to know his attack against Ms. Henriquez's attorney in his first response to her motion about the lack of equity in the Property was completely false, considering that Ms. Henriquez's claim against the Property exceeded its value because that value was actually proffered by Mr. King and/or Mr. Izzo on Mr. King's Petition. Yet he made it any way. He also misled the court. First, he claimed that this was a straightforward case involving a straightforward legal issue. Later, he incredibly claimed that this case was extremely complicated and entirely novel. Then, Mr. Izzo continued to act in bad faith in prosecuting this case, as he was no less vexatious or oppressive than his client. Mr. Izzo's actions throughout this case and the continuation of the scheme evidences an abuse of the bankruptcy process and bad faith warranting sanctions under both 11 U.S.C. § 105(a) and the court's inherent powers.

Finally, Ms. Henriquez also requests sanctions under 28 U.S.C. § 1927. Because the court has determined that sanctions are appropriate under Rule 9011 and under 11 U.S.C. § 105(a) and its inherent powers, it declines to render a decision concerning sanctions under 28 U.S.C. § 1927 as it would be an unnecessary exercise to do so, would not change this court's determination or the ultimate outcome, and simply because the court wishes to waste no more time on this case that was filed in inherently bad faith and without a valid bankruptcy purpose.

Amount of Sanctions

Turning to the amount of the sanctions, Rule 9011(c)(2) states that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Under Rule 9011, the "court is afforded broad discretion in determining the appropriate sanction." *In re Redante*, 579 B.R. 354, 366 (Bankr. E.D. Pa. 2018) (citing *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 811 (3d Cir. 1992)). As to sanctions under this court's inherent powers or under section 105(a), "[s]anctions pursuant to that section include actual damages incurred and reasonable attorney's fees." *In Re Glob. Prot. USA, Inc.*, 546 B.R. 586, 631 (Bankr. D.N.J. 2016) (citing *In re Nowlin*, 04–08147, 2009 WL 2872916, at *5 (Bankr. M.D. Tenn. Aug. 27, 2009)). However, just because sanctions *may* include reasonable attorney's fees, a court is under no obligation to award the full amount of a movant's fees, as "courts have broad discretion to determine whether to impose sanctions and the nature or amount of those sanctions." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010). "In determining an appropriate sanction, courts should consider the goals of 'compensation to the injured party, punishment and deterrence.' The sanction 'should be tailored to fit the particular wrong.'" *In Re Glob. Prot. USA, Inc.*, 546 B.R. at 631 (citing *In re A.H. Robins Co., Inc.*, 133 F.3d 913 (4th Cir.

1998), and *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993)). Where a debtor's bad faith has caused another party to "incur attorney fees and expenses, in filing and prosecuting [a] motion to dismiss," bankruptcy courts have awarded reasonable attorneys' fees and expenses. *In re Mehlhose*, 469 B.R. 694, 711 (Bankr. E.D. Mich. 2012). "Reasonableness" in attorneys' fees guides the sanction power. *See In re Montgomery*, CIV.A. 12 C 9328, 2013 WL 1943293, at *6 (N.D. Ill. May 7, 2013); *In re Ford*, 522 B.R. 842, 848 (Bankr. D.S.C. 2015); *In re Rosebar*, 505 B.R. 82, 89 (Bankr. D.D.C. 2014); *In re Cutting*, 14-60309-7, 2015 WL 4331152, at *3 (Bankr. D. Mont. July 15, 2015). Likewise, for sanctions issued pursuant to 105(a) and a court's inherent authority, "one permissible sanction is an 'assessment of attorney's fees.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). A court may "exercise discretion and judgment" in allocating litigation expenses, and "may take into account its overall sense of a suit." *Id.* at 110–11. Under this analysis, "a court may . . . decide that all or only a percentage of a category of expenses were incurred solely because of the sanctioned party's misconduct." *In re Vascular Access Centers, L.P.*, 646 B.R. at 760 (citing *Goodyear)*. There is no requirement that a court award *all* of a movant's attorney's fees, as a court may use "fee-shifting sanctions to cover some or all of the reasonable attorney's fees and costs directly incurred as a result of bad faith conduct under Rule 9011, its inherent authority, or Section 1927[.]" *In re Delaware Valley Lift Truck Inc.*, 640 B.R. at 371. And not only is awarding all of a movant's attorney's fees not required, but a court may only do so in "exceptional cases." *Goodyear*, 581 U.S. at 110.

The court has struggled with determining the appropriate sanction and does not make its decision lightly. It recognizes that Ms. Henriquez has expended significant fees and expenses of over $23,000.00 in the prosecution of this case, and that the court ultimately determined that the case was filed in bad faith. But, as counsel to Ms. Henriquez acknowledged during the May 30 hearing, the court is not going to award the full amount of fees requested – nor is it required to. Some, but not all, of the work had to be done to get the end result desired by Ms. Henriquez. Perhaps, and the court says his with great hesitation, some of the work could have been avoided. But in the end, Mr. Izzo and Mr. King proceeded in bad faith and equally culpable. The court will award as compensation to Ms. Henriquez the total amount of $5,000.00 for which Mr. Izzo and Mr. King are each jointly and severally liable. The court believes that awarding this amount will have its appropriate effect on Mr. Izzo, Mr. King and/or any other debtor or attorney who in the future seeks to pursue a bankruptcy case for an invalid purpose, and then, to continue that case in bad faith. Nothing herein prevents Ms. Henriquez from pursuing any further rights and remedies she may have in the state court. She may also seek enforcement of this award in state court.

An appropriate judgment has been entered consistent with this decision and is enclosed.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge